Rachael Marie YACK, a minor, through her parents and guardians, Thomas and Wendy Yack

v.

Robert Paul GRIMES and Mary Elizabeth Hazler

and

The Hon. Michael Franciosa.

No. 81–2743.

United States District Court, E. D. Pennsylvania.

July 10, 1981.

Marcel L. Groen, Ronald Smolow, Bensalem, Pa., for plaintiff.

David Scholl, Harry Newman, Bethlehem, Pa., for defendants.

TROUTMAN, District Judge.

THE COURT: Needless to say, I regret the delay, but the need for immediate action requires some immediate attention, and I appreciate your patience.

Child custody disputes, spawning not only difficult legal questions but also strong emotional sentiments, antedate American jurisprudence and British common law. In one old and familiar case, two women who disputed the custody of a child each argued before the king that the child properly was hers. The king responded:

" 'Bring me a sword.' And they brought a sword before the king.

"And the king said, 'Divide the living child in two, and give half to the one and half to the other.'

"Then spake the woman whose living child was unto the king, for her bowels yearned upon her son, and she said, 'Oh my Lord, give her the living child and in no wise slay it.' But the other said, 'Let it be neither mine nor thine, but divide it.'

"Then the king answered and said, 'Give her the living child and in no wise slay it. She is the mother thereof.'

"And all Israel heard of the judgment which the king had judged; and they feared the king, for they saw that the wisdom of God was in him to do judgment." I Kings, Chapter 3, verses 24 to 28 (King James Version).

The present case, engendering complex procedural and substantive legal questions and inviting visceral responses thereto, would test even the wisdom of Solomon.

Rachael Yack, the child whose custody the parties dispute, was placed with the plaintiffs when she was three days old and, except for one brief period, has remained with them ever since. Within a few days of her birth, the child's biological mother decided she wanted the child back. The child's biological father never consented to any adoption proceeding. In September of 1980, the biological parents initiated a custody action in the Court of Common Pleas of Northampton County, during the course of which Judge Franciosa entered an order dated February 6, 1981, revoking the plaintiffs' custody and directing Rachael's placement with the County Child Protection Agency. Plaintiffs have appealed this ruling to the Superior Court of Pennsylvania, which has scheduled arguments for September of '81.

After several months of legal skirmishing, the plaintiffs filed a petition for custody which Judge Franciosa denied without hearing. In June he held a dependency hearing and found Rachael to be a "dependent" child but deferred her placement. On

July 1, 1981, he reversed that finding on the basis of a "confidential report" which he had ordered.

On the same day, Justice Larsen of the Supreme Court of Pennsylvania issued a supersedeas directing Rachael's placement from the agency to plaintiffs. One week later, upon motion, the Supreme Court of Pennsylvania reversed his ruling and directed Rachael's placement with her biological parents.

Plaintiffs then instituted this action to stay Judge Franciosa's orders of February 26 and July 1, 1981, for a writ of habeas corpus directing the biological parents to show cause why they should have custody, for a declaration that certain portions of the Pennsylvania Adoption Act are unconstitutional and for appointment of separate counsel for Rachael herself.

To prevail on a motion for a temporary restraining order, plaintiffs must demonstrate, inter alia, a likelihood of success on the merits. See *Kennecott Corp. v. Smith*, 637 F.2d 181 (3d Cir. 1980). Specifically, plaintiffs seek a stay of the orders entered by defendant Judge Franciosa. Plaintiffs also request a declaration that the Pennsylvania Adoption Act unconstitutionally violates the rights of all children under the age of six months and denies them due process and equal protection in not affording them the right to a hearing and impartial trial, adequate counsel and consideration of their "best interests."

■ A writ of habeas corpus may not be used to challenge the custody of a foster or adoptive parent over a child. A determination of child custody, without more, simply cannot provide the predicate for the use of federal habeas corpus. See *Lehman v. Lycoming County Children's Services Agency*, 648 F.2d 135 (3d Cir.) (en banc), cert. denied, —— U.S. ——, 102 S.Ct. 630, 70 L.Ed.2d 611 (1981).

■ Similarly, the Due Process Clause of the Fourteenth Amendment does not require appointment of counsel where a litigant's personal liberty is not at stake. See *Lassiter v. Department of Social Services,*

452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640, decided by the Supreme Court of the United States on June 1, 1981. For either protection to apply, the litigant must be in, or risk, incarceration or a restriction or restraint affecting his or her personal liberty. At no time has Rachael been deprived of her physical liberty within the meaning of the Fourteenth Amendment.

■ The only question properly before this Court is whether Judge Franciosa and the other defendants violated Rachael's civil rights and whether the questioned portions of the Pennsylvania Adoption Act are unconstitutional. On the basis of the understandably limited record presently before the Court, plaintiffs have failed to show at this point the deprivation of a property right protected by the Fourteen Amendment Due Process Clause or an invidious discrimination offending the Equal Protection Clause.

We express no opinion concerning where Rachael's "best interests" lie and with whom she should live. Those questions must be reserved for the state courts to solve. We determine only that the plaintiffs have failed to demonstrate a likelihood of success on the merits and, therefore, to meet their burden to obtain a temporary restraining order. Accordingly, plaintiffs' motion for a temporary restraining order will be denied and we shall enter the following order:

AND NOW this 10th day of July, 1981, it is ORDERED that plaintiffs' motion for a temporary restraining order is DENIED.

I would be less than candid if, in closing, I did not say that this is a difficult decision for anyone to make, particularly for one who is a father for many years and a grandfather for 18 months. Thank you for your patience and courtesy in remaining, and this Court is now adjourned.